IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

**Christopher L. Smith,**

    Plaintiff,

v.

**BNSF Railway Company,**
**a Delaware corporation,**

    Defendant,

---

## COMPLAINT AND JURY DEMAND

Plaintiff Christopher L. Smith, for his Complaint, states as follows:

### 1. PARTIES

1. Plaintiff Christopher L. Smith ("Smith") is an individual citizen of Commerce City, Colorado and currently resides at 10680 Norfolk St, Commerce City, Colorado. Smith is an employee of BNSF Railway Company.

2. Defendant BNSF Railway Company is a Delaware corporation registered to do business and doing business in the State of Colorado. Defendant is a private employer with 20 or more employees on any given day of the year, and is engaged in an industry affecting commerce. Thus, at all relevant times to this action, Defendant is an "employer" as defined by the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 630.

### II. JURISDICTION

3. Jurisdiction is asserted pursuant to the ADEA, 29 U.S.C. § 623 et seq. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343, in that this action

arises under federal law. This Court has personal jurisdiction over Defendant pursuant to § 13-1-124, C.R.S. (2003), since Defendant transacts business in the state of Colorado.

4. The discriminatory acts alleged herein occurred in Denver, Colorado. Thus, venue is proper in this judicial district pursuant, but not limited, to 28 U.S.C. § 139 1(b) and 29 U.S.C. § 11 32(e)(2), since the unlawful employment practices alleged herein were committed within the State of Colorado.

### III. ADMINISTRATIVE HISTORY

5. Smith filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 2, 2007, regarding the discriminatory conduct by Defendant.

6. All procedural and administrative prerequisites for filing this suit have been met. On or about July 29, 2008, the EEOC issued a Notice of Right to Sue to Smith. This action has been commenced within 90 days of receipt of the Notice of Right to sue.

### IV. FACTUAL ALLEGATIONS

7. Plaintiff incorporates by reference his prior allegations.

8. Smith is an employee of BNSF Railway Company. Smith's date of birth is May 26, 1949 and he was 57 years of age at the time of being discharged as a Trainmaster.

9. Defendant hired Smith on or about September 25, 1975, as a Switchman Brakeman at its Pueblo, Colorado operations. Smith became an Assistant Trainmaster on January 1, 1987, and was promoted to Trainmaster in 1996 and transferred to Denver.

10. From 1996 until the time of his discharge as Trainmaster, Smith worked in the Denver operations of BNSF.

11. On or about May 16, 2007, Smith was discharged as a trainmaster.

12. On or about June 1, 2007, Smith accepted a demotion to the position of Brakeman.

13. Prior to 2006, Smith was an employee in good standing and received good reviews from his superiors. Smith has worked at the same office in Denver, Colorado for more than 12 years.

14. Performance Management Process ("PMP") evaluations for the years 2000, 2001, 2002, and 2003 all state that Smith exceeded or achieved performance objectives in all areas of review.

15. The PMP for year-end 2004 indicated a need for improvement in the Safety category, and both Smith and the reviewing supervisor, Assistant Terminal Superintendent Kenneth Murray ("Murray"), acknowledged that part of the alleged lack of success was due to power and crew shortages, which were matters beyond Smith's control. All other ratings in the 2004 PMP for Smith were "Exceeds Target" or "On Target".

16. In October, 2005, Murray was replaced by Matthew Moyer ("Moyer").

17. In the year-end PMP for 2005, all ratings by Moyer were "Exceeds Target" or "On Target" for Smith. Smith's self-evaluation indicated a need for improvement in the Safety category and the Service and On-time Performance category, all based on factors beyond his control.

18. In the year-end PMP for 2005, Moyer's evaluation for the BNSF Competencies category included many statements of high praise for Smith, rating Smith at "Exceeds Target" and stating that he "observed a high level of understanding on (Smith's) part when we met with Owens Corning and Coors. I believe (Smith's) communication with those companies improved our reputation in the business community that we serve". Moyer additionally concluded that Smith overall "demonstrate[d] the BNSF competencies at a high level. (Smith) removed the bar while working the industry job for exceeding our customer expectations. (Smith possessed) great problem solving skills and use good judgement on a consistent basis."

19. In the Overall Performance Rating section of the 2005 PMP, Moyer stated that all of Smith's scores for the last quarter of 2005 put Smith in the top 25% of Denver Trainmasters.

20. In a meeting between Smith and General Manager Janssen Thompson ("Thompson") on February 22, 2006, Thompson stated that Smith was the "senior Trainmaster", a reference to age and the fact that Smith was the oldest Trainmaster in Denver.

21. The 2006 mid-year PMP evaluation by Matthew Moyer stated the need for improvement in Leadership Model behaviors, stating that Smith had "not always acted as a Visionary Leader with the Terminal." The evaluation was critical of Smith's performance in several areas, and expressed a desire for Smith to be willing to step up to back fill the Assistant Superintendent (*i.e.*, Moyer) positions during vacations. Other areas in the evaluation rated as "Needs Improvement" were due to factors beyond Smith's control. Moyer's overall evaluation was highly critical of Smith's performance.

22. During 2006, Smith made many efforts to improve his alleged poor performance and meet management objectives, including but not limited to, assisting newer Trainmasters and Yardmasters to become leaders, providing other training to Yardmasters and Trainmasters, working on vacation days because the terminal needed help, and creating training manuals and other tools for use by peers. In March, 2006, Smith developed and published the Denver Terminal Guide on his own time, to assist Yardmasters and Trainmasters in building trains.

23. In June, 2006, BNSF hired Mr. Benison as a Management Trainee.

24. In June, 2006, Smith was required to sign a letter stating that he did not meet the operation testing goals for May. Other Trainmasters who did not meet goals were not required to sign a similar letter.

25. On August 31, 2006, Smith met with HR Director Jamie Holt ("Holt") to discuss the 2006 mid-year evaluation.

26. In Moyer's Leadership Model category evaluation for year-end 2006, Moyer again stated that he "would like Chris to transition into understanding more of the Planner's position and also stepping up to back fill the Assistant Superintendent positions during vacations" and "Preception [*sic*] that Chris is not concerned about Developing as a Leader in BNSF, but in reaching retirement date," and giving Smith a rating of "Needs Improvement." Moyer rated the Service and Safety categories as "Needs Improvement" based on the Terminal's failure to meet goals. All other Supervisor category ratings were "On Target", but the Overall Performance Rating was highly critical of Smith and rated Smith's performance as "Needs Improvement".

27. Following the receipt of the 2006 year-end evaluation, Smith met again with Holt, who told him that the PMP was good and that she did not know what Smith had allegedly done wrong.

28. On January 16, 2007, Terminal Superintendent Fred Rutt ("Rutt") initiated a discussion in the Trainmaster's office regarding dissatisfaction about Coors traffic that resulted in loud yelling by Rutt to the extent that some Trainmasters had to leave the room to complete their shift turnover.

29. After 12 years of service as a Trainmaster, Smith was placed on an unwarranted 60-day Performance Improvement Plan ("PIP") by Moyer on February 12, 2007.

30. After receiving the PIP, Smith met with Holt and Thompson to discuss the PIP.

31. The PIP purported to establish actions needed to improve Smith's performance in the areas of Accuracy in Reporting, Meeting Suspense Deadlines, Communication, and Customer Relations, and required meetings every two weeks during the 60-day PIP period. The descriptions of necessary actions were amorphous and vague and the performance measurement criteria subjectively called only for "review," specifically a "joint review" and "360 review" by peers, which never occurred.

32. In Smith's first meeting with Moyer regarding the PIP, Smith asked Moyer what he needed to do differently. Moyer responded, "Nothing."

33. In a subsequent meeting with Moyer, Smith was shocked to be criticized for speaking with other peers about retirement.

34. Smith met with Moyer at intervals prescribed in the PIP and submitted all requested information to Moyer.

35. In other meetings with Moyer regarding the PIP, Smith was never told that he was not achieving performance improvement objectives and was never given any specific direction on what he should accomplish. During the entire PIP process, Smith repeatedly expressed concerns about the ambiguity of the PIP, specifically that the plan was poorly written, and that there were no specific objectives defined and no measurable methods of achievement established.

36. On March 21, and April 2, 2007, Smith was again surprised to be required to investigate the Mechanical Department, when no other Trainmaster was required to do so.

37. On April 27, 2007, Smith was praised by General Manager Thompson for his work on a project to reduce injuries at the Irondale Terminal.

38. On May 16, 2007, approximately one month after the end of the PIP period, Smith was called to a meeting with Moyer, Steve Thompson, and Holt, where he was read a letter of termination. Smith asked what part of the PIP he did not achieve and Moyer responded that "now is not the time to discuss it."

39. On or about June 1, 2007, Smith was demoted to a Brakeman position.

40. On October 2, 2007, Smith filed a Charge of Discrimination with the EEOC based on age discrimination.

41. In BNSF's position statement regarding Smith's EEOC filing, dated October 23, 2007, it alleged that Mr. Moyer had concluded, on April 27, 2007, that Smith had not successfully completed the PIP.

42. Upon information and belief, BNSF replaced Smith with a younger person, Mr. Benison, who had been hired by BNSF as a Management Trainee in June, 2006 and assigned to the Denver Terminal on November 1, 2006. Mr. Benison is approximately twenty to thirty years of age. On June 16, 2007, Mr. Benison was hired as Trainmaster in Smith's vacant position.

## FIRST CAUSE OF ACTION

### V. AGE DISCRIMINATION

43. Smith incorporates all prior allegations contained herein.

44. Smith's age was a determining factor in Defendant's termination of his employment.

45. Any reason(s) proffered by Defendant for terminating Smith are pretextual.

46. Defendant acted willfully since it knew or should have known that its conduct was prohibited by the ADEA.

47. Defendant's illegal conduct created a hostile work environment for Smith.

## VI. JURY DEMAND AND REQUEST FOR RELIEF

Smith requests the following relief:

1. Reinstatement as Trainmaster at prior rank and seniority

2. Back pay, including but not limited to, lost wages, benefits, raises, lost training benefits, promotions and bonuses;

3. Liquidated damages;

4. Front pay;

5. Costs;

6. Pre- and post-judgment interest; and

7. Attorneys' fees; and

8. Any other relief deemed necessary to make the Plaintiff whole.

Smith requests trial by jury.

DATED this 28th day of Oct., 2008.

ELWYN F. SCHAEFER, P.C.

Elwyn F. Schaefer
1801 Broadway, Suite 550
Denver, Colorado 80202
(303) 825-1961

Plaintiff's Address:

Christopher L. Smith
10680 Norfolk Street
Commerce City, Colorado 80022